## WILLIAM H. SALSBURY, RESPONDENT, v. THOMAS U. PARSONS, APPELLANT.

*Exempt property—Code of Civil Procedure, secs.* 1390, 1391 —*Trust—when invalid as being a passive one.*

This action was brought to recover damages for the conversion of certain wheat which had been sold under an execution issued upon a judgment recovered by the defendant against the plaintiff. The wheat was raised upon a farm occupied by the plaintiff, and which had been devised by his father to his son Abram, to be held in trust for and during the natural life of the plaintiff, for his benefit or that of his family. The will provided that if the said Abram and another son, Guy, should think it would be for the best good of the plaintiff or his family, they might allow the plaintiff to occupy the farm without rent, but the term was not to be for more than a year at a time. The trustee and Guy were authorized to lease the farm to other persons, or to sell and invest the proceeds, and appropriate the interest or income of the estate to and for the benefit of the said William or his family.

*Held,* that even if the trust were assumed to be valid, yet, as the wheat was in part the product of the plaintiff's own skill and labor, it could not be held entitled to the exemption accorded to the trust estate.

That if the trust were invalid, the wheat was not exempt from execution, under section 1390 of the Code of Civil Procedure, as necessary "flour and vegetables, actually provided for family use," as "wheat" is not "flour" within the meaning of that section.

That it was not exempt under the $250 clause of section 1391 of the Code of Civil Procedure, as that related only to necessary household furniture, working tools and teams, professional instruments, furniture and library.

*It seems,* that the trust was invalid, and that the title to the farm was vested in the plaintiff. (Per HAIGHT, J.)

APPEAL from a judgment of the County Court of Niagara county, affirming the judgment of a justice of the peace in favor of the plaintiff.

*David Millar,* for the respondent.

*M. S. & B. J. Hunting,* for the appellant.

HAIGHT, J.:

This action was brought to recover damages for the alleged conversion of a quantity of wheat. The defendant was a judgment-creditor of the plaintiff. The wheat in question was levied upon and sold under the directions of the defendant by virtue of an exe-

cution issued upon the judgment. The respondent claims that the wheat was trust property, and, under the statute, not subject to levy and sale on execution.

There is no doubt but that a trust in lands created by a person other than the debtor and designed for the support of the debtor is not liable to execution, and can only be reached in equity where there is a surplus. (Code, § 1879; 1 R. S., 729, § 57; *Williams* v. *Thorn*, 70 N. Y., 270; *Graff* v. *Bonnett*, 31 id., 1; *Bramhall* v. *Ferris*, 14 id., 41; *Downing* v. *Marshall*, 23 id., 376.)

The important question raised for our consideration is as to whether or not the wheat in question was trust property. It appears from the conceded facts in the case that Guy M. Salsbury died seized of the premises on which the wheat was grown; that he left a last will and testament, which was admitted to probate in March, 1880; that the plaintiff has occupied the premises referred to by leave of the executor and Guy M. Salsbury, the plaintiff's brother, under the provisions of the will, and that the wheat in question was raised by him on the land referred to. The plaintiff testified upon the trial, and it was not disputed, that he had the entire management of the farm, paid the taxes, hired the help and paid them with money got from the sales of the products of the farm.

So much of the will as becomes necessary to consider upon this appeal is as follows: "Third. I give and bequeath to Abram L. Salsbury, fifty-one acres of land situate in the town of Wilson, county of Niagara and State of New York, and known and distinguished as a part of lot number fifty-eight, to have and to hold the same during the natural life of my son William H. Salsbury, in trust, for the benefit of my said son William H. Salsbury, or for the benefit of his family, subject, however, to the following conditions, to wit: If the said Abram L. Salsbury and my son Guy M. Salsbury, Jr., think it would be for the best good of the said William H. Salsbury or his family, they two may let the said William H. Salsbury occupy said parcel of land free of rental, or otherwise, as they two may agree. But they shall not, in any case, grant the occupancy of said parcel of land to the said William H· Salsbury for more than one year at a time. Said parcel of land cannot be let or rented only by the agreement of the said Abram

L. Salsbury and my son Guy M. Salsbury, Jr., or their chosen successors. The said Abram L. Salsbury and my son Guy M. Salsbury, Jr., can let the aforesaid parcel of land to other parties than the said William H. Salsbury, or they may sell and transfer the same, and they are hereby empowered to sell and transfer the same and reinvest the purchase-money received therefor, or put the purchase-money on interest. If the said parcel of land should be sold, the money received therefor must either be put upon interest and kept inviolate or reinvested in real estate. The said Abram L. Salsbury and my son Guy M. Salsbury, Jr., may appropriate the interest upon the money held in trust by the said Abram L. Salsbury, or the use or income of any real estate held in trust by said Abram L. Salsbury, for the benefit of the said William H. Salsbury, or his family, to either his or their benefit." It will be observed that the testator has attempted to create in Abram L. Salsbury a trust estate, and that this trust is made for the benefit of William H. Salsbury, the plaintiff in this action, and his family. That it then provides that the trustee, with the consent of Guy M. Salsbury, Jr., may let William H. Salsbury occupy the land, rent free, but for not more than one year at a time. And under this provision of the will, William H. Salsbury entered into the possession of the premises shortly after the will was admitted to probate, and has ever since continued to occupy the same, with the consent of Abram L. Salsbury and Guy M. Salsbury, Jr.

A serious question is here presented in reference to the estate or interest of the trustee. Section 55 of the Statute of Uses and Trusts (1 R. S., 728) provides that " express trusts may be created for any or either of the following purposes : * * * 3. To receive the rents and profits of lands and apply them to the use of any person during the life of such person, or for any shorter term, subject to the rules prescribed in the first article of this title."

In order to receive the rents, issues and profits, the trustee must be entitled to the possession, and to control and manage the property.

Section 58 (p. 729) provides that " where an express trust shall be created for any purpose not enumerated in the preceding sections, no estate shall vest in the trustee," etc.

If, therefore, the trust attempted to be created is not one provided for by the statute, the interest of the trustee in the property fails

and no estate vests in him. The statute further provides (sec. 47, p. 727), that " every person who by virtue of any grant, assignment or devise, now is or hereafter shall be entitled to the actual possession of lands, and the receipt of the rents and profits thereof in law or in equity, shall be deemed to have a legal estate therein of the same quality and duration, subject to the same conditions as his beneficial interest."

SECTION 48. " The last preceding section shall not divest the estate of any trustees in any existing trust where the title of such trustees is not merely nominal, but is connected with some power of actual disposition or management in relation to the lands which are the subject of the trust."

SECTION 49. " Every disposition of lands, whether by deed or devise, hereafter made, shall be directly to the person in whom the right of possession and profits shall be intended to be invested, and not to any other, to the use of or in trust for such person, and if made to one or more persons to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee."

Under the provisions of the will, William H. Salsbury, on procuring the consent of the trustee and his brother Guy M. Salsbury, was entitled to the actual possession of the lands and the receipt of the rents and profits thereof from year to year. If the will had dispensed with the necessity of procuring the consent of the trustee and Guy M. Salsbury, he would be brought directly within the provisions of section 47 of the statute, in which he would be deemed to have a legal estate from year to year, or during life, dependent upon the conditions embraced in the will. This, however, would not divest the trustee of his estate, if connected with some power of disposition or management. If, however, the trust was merely nominal, it would divest his estate. Under section 49 the devise must be directly to the person in whom the right of possession and profits shall be invested, and not to any other, for the use of or in trust of such person, and if it is so made to another person to the use of or trust for another, the trustee takes no estate whatever. It becomes absolutely void, so that the right of the trustee to the possession and to receive the profits becomes an essential and necessary element, in order to constitute a valid trust under the statute.

Perry on Trusts, section 304, very forcibly expresses the rule that

"in order to create a trust, it is necessary to prevent the legal estate from vesting in the *cestui que trust*, and it is necessary that not only the legal title but the primary use, should vest in the trustee."

It was to prevent the vesting of the legal estate in a trustee with the use and occupancy in another that these statutes were enacted. Our statutes on uses and trusts are in the main copied from the statutes of Henry VIII, which became the law of England as early as the year 1535. Previous to this, a large portion of the land in England was held to uses. The legal title was in one person, but upon the trust and confidence that such person would apply it to the use of some person named, or that such legal owner would permit some other person to have the possession, use and income of the estate. In this way estates could effectually be kept from the hands of creditors. It was to remedy these abuses that the statute of uses was enacted.

We have thus shown that the testator could not create a trust estate by giving the title to Abram L. Salsbury, and the use and occupancy of the lands to William H. Salsbury; that such trusts are passive and merely nominal, and are not authorized by the statute. It only remains to be determined whether the provisions of the will requiring the consent of Abram and Guy M. Salsbury change the rule in this regard.

Upon this precise question we have been unable to find any authority which appears in point. My own impression is to the effect that it does not change the character of the estate. After the consent is procured, the trustee does not appear to have any power or control over the lands during the occupancy of William H. Salsbury. No judgment or discretion appears to be given to him in reference to its control and management during such occupancy. The duties of his trust become merely nominal, and during the year then ensuing William H. Salsbury takes an estate for that time as absolutely as if it was given to him by the express provisions of the will. If I am correct in this view it follows that the products of the farm are absolutely his, and that they are not the products of or the proceeds from a trust estate.

Again, in order to be within the provisions of the statute relieved from liability to seizure and sale upon execution, the property must

wholly proceed from a person other than the debtor, and must be held in trust for him. In this case the wheat in question was in part the products of his own skill and labor. Certainly so much of it as was the product of his own exertions would not be clothed with any trust. It is a familiar rule that property exempt from levy and sale on execution only remains so, so long as it maintains its identity and is kept intact. A horse, under certain circumstances, may be exempt, but, if sold and the proceeds taken and invested in watches, they would not be exempt.

Again, the wheat in question is not exempt under sections 1390 and 1391 of the Code.

Under section 1390 all necessary meat, fish, flour and vegetables actually provided for family use are exempt. Wheat is not flour within the meaning of the section. The $250 clause in section 1391 has reference to necessary household furniture, working tools and team, professional instruments, furniture and library.

The judgment of the County Court and that of the Justices' Court should be reversed.

BARKER, BRADLEY and CORLETT, JJ., concurred upon the last two grounds stated in the opinion.

Judgment of the County Court and that of the Justices' Court reversed.